MARTIN *vs*. THE UPSHUR GUANO COMPANY.

Where a sale of guano was made by a non-resident wholesale dealer to a resident retailer, and the delivery was completed without the State, the title being in the purchaser when the property came into the State, and the transaction not being in fraud of the statute, the sale was not illegal because the guano had not been branded and tagged, and the resident purchaser could not defend against a suit to collect the price of the guano on that ground.

December 21, 1886.

Guano.   Fertilizers.   Contracts.   Before Judge ESTES. Floyd Superior Court.   October Term, 1885.

The Upshur Guano Company brought an action of complaint against W. W. Martin on two acceptances.  The defendant pleaded the general issue, and also that the consideration of the drafts was certain commercial fertilizers, and that these had not been tagged or branded as required by law.  On the trial, it appeared from the evidence that, previously to 1882, Martin had sold guano as agent for the plaintiff, but at that time it was determined to change the plan of operation and to sell him guano.  A voluminous correspondence arose between the parties, the salient parts of which were as follows:

From Martin to plaintiff's president, January 13, 1882:

"Please name lowest price you will sell me potash phosphate for, free on board cars at works ; also ammoniated dissolved bone ; payable next fall.   Please answer at once by wire, night message."

Telegram from plaintiff to defendant, January 15 :

"Twenty-nine ammoniated ; twenty-one potash, in full.   This is low."

Letter from defendant to plaintiff's president, January 17.

" I will buy outright from you at the following prices, provided the goods are up to last season's analysis. . . . Please answer at once."

Telegram from defendant to plaintiff's president, January 24 :

"What about my offer of 17th ?   Must know best price."

v 77-17

Letter from plaintiff's president to defendant, January 24:

"In reply to your favor about prices, now we want to sell you out-right, as our company is so opposed to selling for cotton; but such prices as you offer! I cannot imagine how you think such goods could be made pure. . . . Let us hear at once so as to know what to do."

Letter from defendant to plaintiff's president, January 26:

" Will come 'horse-swapping' rules at you by splitting the differ-ence, and offer you twenty-seven dollars per ton, f. o. b. cars, in sacks at works, for ammoniated dissolved bone, and eighteen dollars per ton in sacks, f. o. b. cars at works, for potash phosphate, and payable 15th November, 1st and 15th December, and will take the old and all stocks on hand at same price, with freight added, in note. . . . . . Please answer me by wire, as the season is now at hand, and the trade must be supplied at once."

Letter from plaintiff's president to defendant, January 30:

"Now you know I have always done for you all I can, and want still to do, but I know when I tell you honestly we are giving you them at figures as near cost as we can, you will believe me. I will do this, and I hope it will be satisfactory, and you will allow me to ship at once what you want: $28 for the am. goods and $18.50 for the potash phos. . . . Let me hear by wire, and it will be all right."

Letter from defendant to plaintiff's president, February 1:

"'Yours of the 30th of January just received and noted, and in re-ply will say I have figured the trade down just as closely, and 'twill not pay me to buy and pay any more than my offer . . . "

Letter from plaintiff's president to defendant, February 3:

" .. . . Then for the present season we prefer selling you on your own proposition, $18 for potash phos. and $27 am. goods and close up all matters on same terms, only add what freight and inspec-tion cost us; these payable in notes 1st November, 15th November 1st December and 1st January. The only security we ask is the farmers' notes, and these to be held in your hands in trust for us. This is the usual custom." . . . . . . . . . . . . . . . .

Telegram from defendant to plaintiff's president, Feb-ruary 6:

" Letter received. Ship my provisions (previous?) orders immediately and wire."

Letter from defendant to plaintiff's president, February 6:

" Your letter of the 3d just received and contents noted, and in reply will say, if you will fill all my orders promptly, and goods come up to last season's analysis, I am willing to give you my notes as follows: . . . How would you sell the old claims to me? Please answer my telegrams."

Letter from defendant to plaintiff's president, February 6:

"In your last letter, you told me if I accepted your offer to buy, to telegraph you at once and you would commence filling and shipping my orders at once, to which I replied as follows: Letter received; ship all my provisions (previous?) orders immediately and wire. This message I sent on the 6th inst. Now what am I to do for this season's business, as 'tis too late to commence to make a trade with a new firm and start goods from the works?" . . . . . . . .

Telegram from defendant to plaintiff's president, February 14:

" Wire what to depend on. Am waiting your shipments."

Telegram from defendant to plaintiff's president, February 16:

" Your offer of the 3d accepted. Fill my orders immediate.y. Answer."

Telegram from plaintiff's president to defendant, February 16:

" Do my best to fill your orders at following : $27 ammoniated, $18 potash here; farmers' notes collateral. Answer."

Telegram from defendant to plaintiff's president, February 16:

" First offer as in my previous letters; fill my orders. Answer."

Letter from plaintiff to defendant, February 16:

" We have your letter of 13th, and understand from it that you accept our offer of 30th ult. If this is correct, will do our very best for you. If we misunderstood, telegraph us. . . . . . . . ."

Letter from defendant to plaintiff's president, February 16:

"I received your p. c. to-day as follows: Do you accept our offer of 30th Jan'y; shall we commence shipping? And I answered at once as follows: Accept offer as in my previous letters; fill my orders. Answer. My offer was as accepted by you in your letter of February 3. . . I made the offer with the promise that if you would fill my orders all promptly and the analysis come up to last season." . . .

Telegram from defendant to plaintiff's president, February 17:

"Your telegram 16th received. Wired you last night that your offer third accepted; fill my orders immediately. Wrote you."

Telegram from defendant to plaintiff's president, February 20:

"Your letter 16th received. Refer to my letters 16th, 17th. Answer what you will do."

Telegram from defendant to plaintiff, February 24:

"Are you going to ship me any goods? Answer."

Telegram from plaintiff to defendant, February 24:

"Shipping to Cass Station; other orders confused. Wire which to send first."

Telegram from defendant to plaintiff, February 27:

"Wire what you are shipping for me.'"

Telegram from plaintiff to defendant, February 28

"Ship everything now. Were delayed by want of bags."

Besides these, there were numerous other letters and telegrams, ordering goods, giving directions for shipping and containing complaints about them.

The jury found for the plaintiff $1,000 principal, and $186.56 interest. The defendant moved for a new trial on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court charged as follows: "So it is for you to show whether this was a Georgia or a Virginia contract. If it was made there, and the guano was Martin's property from the time it was delivered on board the cars,

if it was Martin's property then, it was his property when it got to Georgia, and it was his duty to have it inspected, branded and tagged. If they wrote him a letter and he accepted the terms of that letter, it was or became a contract the moment he accepted the terms. You are to examine into that and see where it was to be consummated; see what the terms were. If it was to be Martin's property then, it was still a Virginia contract; if it was to be the guano company's property until it got here, it was a Georgia contract."

The motion was overruled, and the defendant excepted.

DEAN & EWING, for plaintiff in error.

REECE & DENNY, for defendant.

JACKSON, Chief Justice.

The Upshur Guano Company sued Martin for guano shipped from Virginia to him at Rome, Georgia. The guano was to be delivered at Norfolk, Virginia, on the cars there. The contract was made by letters and telegrams between Rome, Georgia, and Norfolk, Virginia. The plaintiff in error was a dealer in fertilizers, who sold to the planters, and the Upshur Guano Company was a wholesale dealer that sold to him.

The only defence is, that the contract, by legal construction, was made in Georgia, and that the bags in which it was shipped were not branded and tagged according to the Georgia statute.

From an examination of the record, and investigating the facts disclosed by the correspondence in connection with the delivery in Norfolk, Virginia, we conclude that it is a Virginia contract, and not within the provisions of our statute in respect to branding and tagging the bales of fertilizers, especially as this is the dealing of a wholesale dealer outside of Georgia with a retailer within the State.

The point made is the technical one that the letter or telegram whereby the proposition of one side is accepted by the other fixes the place where the contract is made, and if that be written in Rome, Georgia, that is the place of the contract. From an examination of the correspondence, the propositions and answers, it will be seen that it is not easy, under this rule, to fix where the final acceptance was made by the letter or telegram last written assenting to a prior proposition; and in such a case the place of sale and delivery on the cars there must be held to fix the place of the contract.

Such should certainly be the conclusion where the entire legislation of this State, requiring these brands and tags and making sale without them penal, shows that the sale contemplated and intended by the act is a sale actually, and not constructively, made in Georgia. A sale with actual delivery without the State, unless made in fraud of the statute, which is not the case in this delivery in Virginia, could not be well held illegal and penal, and therefore not collectible in the courts of this State, for the absence of that which is contemplated to be done in Georgia. See Code, §§1553(a) to 1553(h), 1571, 1572, 1573, 1574, 1575, 1576, 1576 (a, b, c, d, e, f, g.)

The acts compiled in these citations show that the person in whom is the property when the fertilizer is landed in a Georgia port is the person to have it inspected, branded and tagged, and the title to the property was in Martin when it left Virginia and before it landed on Georgia soil.

Judgment affirmed.